## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

UNITED STATES OF AMERICA

v.

DEVON DWYER

No. 2:26-mj-138-KFW

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Adam Morin, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I have been employed as a Special Agent (SA) with the Federal Bureau of Investigation ("FBI"), since May 2017, and am I currently assigned to work in the Portland, Maine Resident Agency. I previously served as a Patrol Officer with the Portland, Maine Police Department from 2013 until 2017. Over the course of my law enforcement career, I have investigated a variety of crimes, to include drug offenses, firearms offenses, and other offenses related to violent criminal enterprises.

2.      I make this affidavit in support of the requested criminal complaint and accompanying arrest warrant. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers, other agents, and witnesses. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested complaint and warrant.

### PROBABLE CAUSE

3.      I have learned from conferring with Portland Police Department ("PPD") officers, and from reviewing their reports, that on about February 1, 2026, shortly after 1:00 p.m., the PPD dispatched officers to 64 Munjoy South in Portland (the

"Residence") in response to a citizen emergency call. The Caller notified police that a white male with a beard had just kicked in the door to the Residence and held the Caller's roommate at gunpoint. The Caller further stated that the white male was named Devon but went by the name of Duke. The Caller stated that Devon's girlfriend was accompanying him and that the two likely had cocaine with them. The Caller stated that Devon might be on an electric scooter.

4.      When the responding officers arrived at the Residence, they encountered three men and a woman who were present. The responding officers noted that the front door had heavy damage and the frame was cracked. PPD noted that all four individuals present stated that the disturbance was caused by Devon Dwyer. Each of the four witnesses ("CW-1" through "CW-4") provided statements to the police which were generally consistent, including as described as follows:

a.      CW-1 stated, in relevant part, that CW-1 was awoken to banging on the door of the Residence. CW-1 went downstairs to investigate carrying a pipe for protection; CW-1 observed Dwyer standing with a black revolver in his hand. Dwyer began to yell and ask where his stuff was. Dwyer then put the barrel of the gun to CW-1's forehead causing a small cut. Dwyer then retrieved a bag and left.

b.      CW-2 stated that Dwyer occasionally spent the night at the Residence, and that CW-2 had kicked Dwyer out of the Residence the previous day for selling drugs. Dwyer departed without incident but left behind a bag that CW-2 knew to contain drugs. CW-2 stated Dwyer likely broke into the Residence to retrieve his drugs when no one answered the door. CW-2 further stated that CW-1 subsequently told CW-2 that Dwyer broke in and held a gun to CW-1's head. CW-2 stated that Dwyer's girlfriend was with him.

5.      After learning of the events described above, at approximately 3:39 a.m. the following morning, a PPD officer observed Dwyer driving a black electric scooter. The officer attempted to detain Dwyer with verbal commands, but Dwyer fled. A K9 track was initiated. The track began at the location where the officer lost contact with Dwyer and wound through the Portland peninsula, ultimately leading to an apartment building at 658 Congress Street (the "Target Residence.")  As officers approached, Dwyer exited the Target Residence with his electric scooter. Officers then gave Dwyer verbal commands to stop but he fled again. Officers chased Dwyer on foot and observed him reaching into his right jacket pocket. Officers believed that Dwyer was wrapping his fingers around the handle of a firearm while fleeing. During the chase, Dwyer crashed his scooter into the front of a responding PPD cruiser.

6.      Dwyer was placed in handcuffs at the crash scene. Officers recovered a black revolver, more particularly described as .38 caliber Charter Arms Corp, Undercover .38, bearing serial number 93458, and five rounds of ammunition, from the location where Dwyer crashed into the cruiser. Dwyer was searched incident to arrest, which revealed that Dwyer was wearing ballistic body armor. Dwyer was wearing a cross-body bag that contained a number of controlled substances, including but not limited to approximately 91 grams of fentanyl, 12 grams of cocaine, 2 grams of methamphetamine, and 4 grams of cocaine base, all of which were provided to the DEA laboratory for testing, and all of which tested positive as described. Officers also recovered two cellular phones, one from Dwyer's bag, and one from his person, as well as $419 in U.S. currency. Dwyer was transported to the hospital for treatment of his injuries, including a broken arm sustained in the collision, and subsequently

transported to the PPD Headquarters for further interview.[1] As of this writing, Dwyer is detained at the Cumberland County Jail.

7.    I have reviewed forensic extractions of Dwyer's cellular phones, obtained by PPD pursuant to judicially authorized search warrants. I observed hundreds of what I believe to be drug related conversations on the phones.

### CONCLUSION

8.    Therefore, based on the foregoing, I respectfully submit that there is probable cause to charge Devon Dwyer, the defendant, by Criminal Complaint, with the charge of possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and request that the accompanying Criminal Complaint and arrest warrant issue.

Adam Morin
Special Agent
Federal Bureau of Investigation

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date: Apr 28 2026

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge
Printed name and title

---

[1]    Out of an abundance of caution, a PPD Internal Affairs supervisor conducted an administrative interview with Dwyer because of the police-involved collision, which, according to PPD policy, could be interpreted as a use of force by police. PPD policy mandates that any subject who is implicated in a use of force encounter should be so interviewed.